A89A0190. DOUGLAS v. STANDARD.
(382 SE2d 419)

DEEN, Presiding Judge.

The appellant, Roscoe Douglas, leased from the appellee two spaces for fast food establishments in a privately-undertaken urban development project called the Cherry Street Galleria in Macon, Georgia. The first lease agreement was entered on October 25, 1985, and provided for a three-year term commencing December 1, 1985. Douglas entered the second lease agreement on October 3, 1986, also for a three-year term beginning June 15, 1986. Both spaces were located in an area designated as a food court. Douglas also executed two promissory notes for money he borrowed from the appellee to cover construction costs for the two food establishments.

Douglas became delinquent on payments due under the promissory notes in August 1986, and abandoned the premises on December 25, 1986. In separate actions, the appellee sued Douglas to recover on the promissory notes and to recover rentals due under the two leases; the cases were consolidated for trial, and the appellee won a directed

verdict on each claim. The trial court also directed verdict for the appellee on Douglas's counterclaim, which asserted fraud by the appellee in inducing him to enter the lease agreements.

It was stipulated at trial that the appellee had a prima facie case against Douglas on both claims. The evidence adduced at trial addressed Douglas's affirmative defenses and counterclaim alleging fraud in the inducement, specifically the alleged representations made by the appellee prior to the initial lease agreement that (1) adequate parking would be available; (2) sufficient seating for customers would be provided; (3) the galleria would have full tenancy by early 1986; and (4) a sign identifying the food court establishments would be installed outside the building. *Held*:

1. " 'Fraud which constitutes a ground for voiding a contract under OCGA § 13-5-5 must be fraud which induced a party to enter into the contract. [Cit.] The elements of fraud are "(1) a false representation made by (a party); (2) scienter; (3) an intention to induce (the) (other party) to act or (to) refrain from acting in reliance thereon; (4) justifiable reliance by the (other party); (5) damage to the (other party). (Cit.) Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to (sustain a finding) of its existence. (Cit.) It is peculiarly the province of the jury to pass on these circumstances. (Cits.)" (Cits.)' " *Turner Outdoor Advertising v. Fidelity Eastern Fin.*, 185 Ga. App. 815, 816 (366 SE2d 201) (1988). However, when the evidence of fraud is so subtle as to be non-existent, as in the instant case, direction of a verdict is appropriate. See *Batchelor v. Tucker*, 184 Ga. App. 761 (2) (362 SE2d 493) (1987).

Behind the galleria was a parking deck which was expanded to two levels primarily to accommodate the galleria tenants and the occupants of another building, although patrons of the galleria could park there if so desired. After Douglas vacated the premises, in response to the request of the merchants association (comprised of food court tenants) at the time of a city festival, the appellee did affix a small sign indicating that parking was available in the deck behind the galleria. Douglas's contention that the appellee misrepresented that adequate parking would be available was based on the appellee's failure to make it known that patrons could use this deck. Under the plans of the development, the parking deck was never intended and was not convenient for patron use, although patrons could use it; also, by arrangement with the city, 450 nearby spaces were to be available for the galleria patrons. There was no actionable misrepresentation regarding the availability of adequate parking space.

Douglas testified that 107 seats around movable tables were provided for the eight food vendors (one of which was a cookie shop, another of which was Douglas's yogurt shop, and another of which had its own seating). The head of the property management company

for the galleria testified that in July 1986 there were 100 seats, plus 14 in one of the vendor's spaces; in August 1986, 18 seats were added, and in September 1986 an additional 28 seats were added when two vacant spaces were completed. In her opinion, this amount of seating adhered to the development plan for an open setting and was adequate for the food vendors. The facts thus demonstrate a difference of opinion as to what constituted adequate seating, but no actionable misrepresentation regarding the seating.

Douglas claimed that the actual leasing agent assured him that a sign would be erected outside the building that listed the individual food establishments. He further claimed that when he complained about the appellee's failure to do so, the leasing agent agreed that such a sign was needed, but that the head of the management company (who was the wife and partner of the developer) absolutely refused to allow a sign. At the trial, however, she testified that she thought such a sign was a good idea; she also produced the minutes of the merchants association dated January 13, 1987, which indicated that the association discussed bids for a sign but did not reach a decision. The appellee also had in fact installed a large banner as a temporary measure advertising the individual food court vendors that remained up until Christmas decorations took its place. Because it appears from Douglas's own testimony that the leasing agent who actually made the alleged representation about the installation of the sign had no intent to deceive, and because there was no real failure or refusal by the appellee to hang a sign, Douglas's evidence on this issue did not support his claim of fraud. OCGA § 51-6-2, generally; see *Batchelor v. Tucker*, supra.

The appellee's development plan had a goal of full tenancy within three years of the scheduled opening in May 1986. Neither before nor after Douglas vacated the premises did the appellee come close to reaching that goal. Nevertheless, the appellee's stated expectations of full tenancy by early 1986 did not support a claim for fraud, as it was a representation as to a future event. *Gross v. Ideal Pool Corp.*, 181 Ga. App. 483 (352 SE2d 806) (1987).

2. Even had Douglas shown fraud in the inducement with regard to the lease agreements, that type of fraud would have no bearing on his liability under the promissory notes. *Wagner v. Howell Enterprises*, 184 Ga. App. 394 (1) (361 SE2d 698) (1987).

*Judgments affirmed. Birdsong and Benham, JJ., concur.*

DECIDED MAY 23, 1989.

*Arthur L. Phillips*, for appellant.

*Hall, Bloch, Garland & Meyer, Philip T. Raymond III*, for appellee.